**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **COLLEEN CUMMANE and** ) | |
| **GABRIELLE VAN ECK,** ) | |
| **individually and on behalf of all others** ) | Case No. |
| **similarly situated,** ) | |
| ) | **CLASS ACTION** |
| Plaintiffs, ) | |
| ) | **COMPLAINT** |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| **NATIONAL LASER INSTITUTE, LLC;** ) | |
| **ON DEMAND HEALTH AND BEAUTY** ) | |
| **MARKETING LLC d/b/a LOUOLOGY;** ) | |
| **and LOUIS SILBERMAN** ) | |
| ) | |
| Defendants. ) | |
| ) | |

## CLASS ACTION COMPLAINT

Plaintiffs Colleen Cummane and Gabrielle Van Eck ("Plaintiffs"), individually and on behalf of others similarly situated, by and through their undersigned counsel, Luisi Holz Law, for their Class Action Complaint against Defendants National Laser Institute, LLC ("NLI"), On Demand Health and Beauty Marketing, LLC, d/b/a Louology ("Louology"), and Louis Silberman, based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by counsel and review of public documents, as to other matters, states as follows.

## NATURE OF THE ACTION

1.      This is a civil class action brought pursuant to Federal Rule of Civil Procedure ("Rule") 23 for violations of the Illinois Private Business and Vocational Schools Act of 2012, 105 ILCS 426/1, *et seq*. and Illinois Consumer Fraud Act. 815 ILCS 505/1 *et seq*., fraudulent misrepresentation and concealment, negligence, unjust enrichment, and declaratory relief.

2. NLI offers a number of laser courses and certifications that would purportedly allow prospective students to "become a certified cosmetic laser technician," promising to expand their career opportunities by teaching them a new, highly sought after skillset.

3. The problem is that no certification exists under Illinois law for a "cosmetic laser technician."

4. NLI is a private, for-profit vocational school owned and operated by Louis Silberman ("Silberman"), the Chief Executive Officer ("CEO") of the company, within the State of Illinois as well as other States, under the names "National Laser Institute" And "National Injection Institute."

5. Silberman is the face of NLI and touts himself as "Louis the Laser Guy"[1] – he created NLI, he manages and operates NLI, and he personally recruits potential "students" for NLI through social media and other online content:



---

[1] https://louology.com/about/ (last visited Sept. 16, 2024).

6.     NLI's course offerings target potential students seeking a career change and entry into the med spa industry through the performance of laser treatments.

7.     Relevant here, NLI offers various "cosmetic laser" certificate-awarding coursework targeting career changers with little to no experience in cosmetic or esthetic services.

8.     To effectuate its scheme, NLI's marketing and coursework purposely and intentionally fails to disclose that the industry standard in Illinois is that those performing cosmetic treatments utilizing powerful lasers have an esthetician license.

9.     NLI misleadingly promises students that they will be able to start their new career and earn more money immediately upon receiving NLI's certification.

10.     In the State of Illinois, the marketing and offering courses and certificates like those offered by NLI is governed by Illinois' Private Business and Vocational Schools Act of 2012 (the "Act"), which requires an institution's approval by the Illinois Board of Higher Education (the "Board").

11.     At all times relevant herein, NLI was operating without the approval of the Board to offer its coursework or award certificates to students in the State of Illinois.

12.     NLI, at the direction and under the control of Silberman, and through Silberman personally, aggressively marketed its unapproved and unlawful courses to students in the State of Illinois, luring unsuspecting students with promises of gainful and lucrative post-graduation employment or being able to start and own their own business in a purportedly booming industry.

13.     To further its scheme, NLI promises that its graduates will have access to additional courses and services through Louology, NLI's sister company, which purports to instruct enrollees on the steps and procedures for starting their own business in the industry.

14.     Louis Silberman not only owns and controls Louology, he also personally teaches these and other courses and seminars on its website and other media channels.[2]

15.     Unfortunately for NLI's students, the certificates they received upon completion of NLI's coursework are worthless and were awarded in contravention of Illinois law.

16.     Plaintiff and other Class Members suffered damages as a result of NLI's conduct.

17.     Had Plaintiff and the Class known the truth of the matter - that NLI was prohibited from offering its courses or awarding certificates upon completion - they would not have enrolled in NLI's courses.

18.     Plaintiffs, on behalf of themselves and a Class of similarly situated consumers, brings this lawsuit for damages, restitution, and declaratory judgement, with costs and reasonable attorneys' fees.

## JURISDICTION

19.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).

20.     The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed Class are citizens of a state different from a Defendant.

21.     The Court has personal jurisdiction over Defendants because they jointly operate and market NLI and related educational services in the State of Illinois.

22.     Defendants have been doing business in Illinois during all relevant times.

23.     Directly and through their agents, Defendants have substantial contacts with the State of Illinois, have purposefully availed themselves of the Illinois market, and have received substantial benefits and income from their activities in Illinois.

---

[2]     *Louology Course Teasers, Youtube* https://youtube.com/playlist?list=PLPM7Y0x8zXZVcCHwHuXY-KFwOExj2jos2&si=0angDtohQBQGzlPI (last visited Dec. 9, 2024).

24. Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant NLI is registered to do business in this District. Venue is also proper because a substantial part of Defendants' conduct giving rise to the claims occurred in this District, including marketing, advertising, offering, and providing NLI's and other courses and issuing certificates upon completion of NLI's courses.

## PARTIES

25. Plaintiff Colleen Cummane is a natural person, citizen of the State of Illinois, and resident of DuPage County.

26. Plaintiff Gabrielle Van Eck is a natural person, citizen of the State of Illinois, and resident of Cook County, Illinois.

27. Defendant National Laser Institute, LLC, is a limited liability company organized and existing under the laws of the State of Arizona. NLI is registered to do business in the State of Illinois.

28. NLI operates a "school" campus at 814 Commerce Drive, Suite 290, in Oak Brook, Illinois, where its unlawful courses of instruction are offered in person. NLI's principal place of business is 16601 N. 90th St., Scottsdale, Arizona 85260. NLI aggressively markets its courses and services to Illinois residents and citizens in and throughout the state.

29. Defendant On Demand Health and Beauty Marketing, LLC, ("Louology") a corporation organized under the laws of the State of Arizona, doing business as "Louology."

30. Louology's principal place of business is 16601 North 90th St., Scottsdale, Arizona 85260. Louology markets its services in conjunction with NLI to Illinois residents and citizens in and throughout the state.

31. Defendant Louis Silberman is a natural person and citizen of the State of Arizona.

32.     Silberman regularly conducted and controlled business for NLI and Louology in the State of Illinois, both remotely and in-person at NLI's Oak Brook campus.

## COMMON FACTS

### ILLINOIS PRIVATE BUSINESS & VOCATIONAL SCHOOLS ACT

33.     The purpose of the Act is to "provide for the protection, education, and welfare of the citizens of this State[,]" specifically "the students of its private business and vocational schools; and to facilitate and promote quality education and responsible, ethical, business practices in each of the private business and vocational schools enrolling students in this State." 105 ILCS 426/5.

34.     The Act is administered by the Illinois Board of Higher Education (the "Board").

35.     In order to accomplish the outlined goals, the Act prohibits any entity from offering private business or vocational school coursework or awarding certificates of completion without the Board's approval.

36.     This prohibition is absolute and does not allow an entity to even attempt to solicit students in the State of Illinois without satisfying the requirements of the Act.

### NATIONAL LASER INSTITUTE

37.     NLI was founded and is managed by Louis Silberman, who holds himself out as NLI's CEO, in Scottsdale, Arizona.

38.     NLI purports to be a privately-owned educational institution that offers courses of instruction in what it calls "cosmetic lasers" and injectables, such as Botox, in 15 locations, including Oak Brook, Illinois.

39.     NLI offered and continues to offer its courses in the State of Illinois through a number of mediums, including virtually, in-person at temporary rented facilities (including the basement of a Marriott Hotel), and, now, through its own rented space in Oak Brook, Illinois.

40.     NLI promises to deliver each graduating student a certificate of completion that designates the education and documents the course completion.

41.     NLI flaunts itself as standing out from the competition by having the "latest and greatest equipment" and student job placement services, labelling itself the "Harvard of the industry" and the "Number One most highly respected brand."

42.     NLI promises the quality of its expensive coursework, guaranteeing that it is there to ensure students receive the best educational experience available in the "cosmetic laser training industry."

43.     NLI also promises its students that their "cosmetic laser training school" gives you everything you need to succeed in this booming industry.

44.     NLI offers both financing and "need-based" partial scholarships to prospective students.

45.     NLI's laser courses include ten days of instruction, some of which are virtual, for an exorbitant rate of $7,000-10,000.[3]

46.     Nevertheless, unsuspecting students pay these amounts as a result of NLI's promise of immediately increased salaries and business opportunities.

47.     During these courses, students receive training on lasers and other medical equipment in various non-medical and non-sterile environments.

48.     NLI's courses would ultimately end with a party, wherein students who successfully completed their coursework were issued printed certificates and given alcohol to further sell NLI's marketing medical aesthetics and its classes as "fun."

---

[3] The actual Harvard Business School offers a number of credentials remotely for less than $2,000. It does feature a class for $15,000 at the time of the filing of this complaint, though that class *lasts an entire year*. *See* https://online.hbs.edu/courses/ (last visited Dec. 10, 2024) (Credential of Leadership, Impact, and Management in Business (CLIMB) costs $15,000 and takes a year to complete).

49.     Silberman would regularly supervised these events and courses.

50.     While the day-to-day courses should have been supervised by a physician or other authorized medical practitioner, they rarely were.

51.     When not in attendance, Silberman would personally control the content and execution of NLI's courses and events through personally crafted and approved policies and procedures, and by personally, but remotely, directing NLI employees at the events and courses.

52.     Silberman also took it upon himself to personally recruit students – most often young women – as he encountered them and by specifically targeting them on Instagram and other social media platforms.

### NLI'S UNLAWFUL ILLINOIS OPERATIONS

53.     Despite holding itself out as an educational institution, NLI does not have approvals to operate in Illinois from the Board, as required by the Act.

54.     NLI has offered courses in person in Illinois for over a decade.[4]

55.     Originally, NLI offered "destination courses," where it would schedule group courses at various event venues, including the basement of the Mariott Hotel in Oak Brook, Illinois.

56.     In or around June 2023, NLI moved into its current location in Oak Brook, Illinois, which NLI refers to as a "campus" and markets as a medical aesthetics school.

57.     In reality, it is just a leased commercial office space.

58.      NLI continued to offer its courses along the same lines, marketing its certificates to inexperienced industry newcomers, and ending their courses with the same graduation parties.

---

[4] *See* https://web.archive.org/web/20141121145310/http://nationallaserinstitute.com/locations/ (featuring a website capture of NLI's "locations" marketing page featuring Chicago as a destination course location, capture taken Nov. 2014).

59.     Despite completing their coursework and receiving certificates, many of NLI's students failed to find employment operating and performing cosmetic treatments on lasers, as promised.

60.     Despite the promises and representations made by Defendants in their marketing and courses, NLI's certificates in no way qualify its students to engage in what it calls "medical aesthetics" or to perform any laser treatments for a number of reasons.

61.     First, Illinois does not recognize the practice of "medical esthetics."

62.     Indeed, the Illinois Department of Financial and Professional Regulation ("IDFPR") "deems the use of the term 'medical esthetician' by a licensed esthetician to be a violation of the Barber, Cosmetology, Esthetics, Hair Braiding, and Nail Technology Act."[5]

63.     That is presumably because the IDFPR recognizes that the use of 'medical esthetician' "may be misleading and deceptive to Illinois consumers."

64.     "Specifically, consumers may be misled to believe that a 'medical esthetician' has some type of medical training that has been sanctioned by the [IDFPR] or that the licensee has been authorized by the [IDFPR] to perform some type of medical service."

65.     The IDFPR goes so far as to prohibit estheticians who are conducting medical procedures from holding themselves out as an esthetician while doing so.

66.     Noting that, in such circumstances, "the individual is acting as an unlicensed assistant to the physician, not as an esthetician."

67.     Such individuals are prohibited from indicating in "'any manner' that the service or procedure delegated by the physician is part of the practice of aesthetics."

---

[5]  *IDFPR Statement on "Medical Estheticians"*,
https://idfpr.illinois.gov/content/dam/soi/en/web/idfpr/profs/info/medicalestheticiansstatement.pdf#:~:text=The%20Department%20deems%20the%20use%20of%20the%20term,Cosmetology%2C%20Esthetics%2C%20Hair%20Braiding%2C%20and%20Nail%20Technology%20Act. (last visited Dec. 10, 2024).

68.     Unfortunately, Defendants fail to mention any of this to NLI's students and go to great lengths to conceal the reality of the regulatory structures imposed on the industry they purport to offer a gateway into.

69.     Instead, Defendants represent to prospective NLI students that one of NLI's certificates is all they need to work in the 'medical aesthetics' industry.

70.     NLI's certificate in no way qualifies its graduates to independently practice "cosmetic lasers" or "medical aesthetics."

71.      Second, the Act provides for the "protection, education, and welfare of the citizens of this State" (105 ILCS 426/5) in part by prohibiting the operation of "a private business and vocational school" in the State of Illinois "without obtaining from the Board a permit of approval[.]" 105 ILCS 426/20.

72.     NLI does not now have, and at all relevant times has never had, a permit of approval from the Board.

73.     Per the Act, without Board approval, NLI could not even "advertise a school or any program of study or solicit prospective students unless." 105 ILCS 426/65.

74.     NLI was expressly prohibited from awarding certificates by the Act, which only allows certificates to be awarded "by a private business and vocational school approved by the Board to award such a certificate[.]" 105 ILCS 426/25(a).

75.     Accordingly, NLI's marketing, advertising, coursework, operations, and awarding of certificates to its students were done in contravention of the Act and Illinois law.

76.

77.     Moreover, absent being a licensed physician, no NLI graduate could own their own business performing laser treatments.

78.     Laser treatments identified in NLI's marketing qualify as medical treatments in the State of Illinois and require the delegation of a physician. 805 ILCS 15/1 *et seq*.

79.      Unfortunately, the average consumer and prospective student is not reasonably likely to understand the regulatory frameworks and educational requirements controlling the use of medical lasers.

80.     Predatory conduct like Defendants' is precisely why the Act was adopted - to prevent the abusive marketing and business tactics of sophisticated businesses pushing the dream of professional development on prospective students seeking a change in their life.

**NLI PREYS ON UNSUSPECTING STUDENTS WITH NO EXPERIENCE IN ESTHETICS**

81.     NLI sells its courses by targeting and preying upon potential students seeking to change careers, many of whom have no experience in cosmetology or esthetics and are brand new to the industry.

82.     NLI couples its self-aggrandizing and bombastic marketing with the allure and promise that prospective students will be able to either generate significant income or open their own business with its certificates.

83.     NLI persistently represents that its graduates can successfully enter into the "medical aesthetics industry" and immediately begin earning with their new credential.

— **What is the earning potential of a cosmetic laser technician?**

Like most professions, there is a wide range of earning potential. The majority of laser technician jobs in the US pay an hourly rate plus a commission on total revenues of services as well as a commission on skincare product sales. Full-time cosmetic laser technicians typically earn a range of $45,000 – $85,000 annually, depending upon how busy they are and how good they are at educating their clients about all the additional, amazing services they can enjoy.

— **Can I own my own business?**

Absolutely, yes! [6]

84. NLI's courses and marketing tactics target those unfamiliar and inexperienced with the industry – this is evident by the actual course offerings and descriptions, which primarily target and appeal to inexperienced students.

**COMPREHENSIVE LASER BOOTCAMP**

Our Comprehensive Laser Bootcamp course is designed to prepare both aestheticians and those new to the health and beauty industry with a five-star education, taught by experienced, warm and caring instructors. You'll learn everything you need to know to become an expert laser tech while utilizing the latest cosmetic laser technologies. Learn about laser safety, skin anatomy, client interaction, marketing yourself as you step into the billion dollar exciting medspa world.

**LASER ESSENTIALS**

Our streamlined 11-day Laser Essentials Bootcamp is a concise course designed for aestheticians and career changers eager to make a swift entry into the medspa industry. Within this focused period, you'll learn vital laser safety protocols and skin anatomy from experienced instructors. This course is your gateway to becoming a skilled laser technician, offering a quick yet thorough education in the latest cosmetic laser technologies.

**LASER HAIR REDUCTION**

In this 8-day laser hair reduction training course, students will learn everything they need to know about the skills and techniques to perform laser hair reduction. Our laser hair reduction training course includes 40 hours of classroom education that prepares students in the fundamentals of laser education.

**NEXT LEVEL LASER – 1 DAY COURSE**

In our Next Level Laser Course, obtain advanced training in a variety of popular treatments including advanced fractional C02 and Carbon Facial. If you're looking to learn the latest and greatest new technologies and techniques, this class is just for you! This course is designed for anyone in the marketplace with prior cosmetic laser training or is working within the industry. [7]

85. Three of the four courses identified above target "those new to the health and beauty industry," focus on "fundamentals," or are offered as a "gateway," attempting to appeal to those with limited or no prior experience with the industry.

86. NLI's marketing resulted in consumers like Plaintiffs reasonably relying on it and believing that NLI was legally offering its courses and certificates, and that the additional services and benefits promised, like job placement and graduate services, would deliver as advertised.

---

[6] https://nationallaserinstitute.com/comprehensive-laser-course/#1696908770785-7dbaba62-c1f1 (last visited Dec. 10, 2024).

[7] *See* https://nationallaserinstitute.com/comprehensive-laser-course/ (last visited Dec. 10, 2024).

87.    NLI went so far as to claim that its graduate placement services offer 500 leads per month, including leads from employers across the country that NLI purportedly had "relationships" with.

# GRADUATE SERVICES

Our Graduate Services Department is available as a tool and resource for every single graduate of National Laser Institute. We provide 200 – 500 job leads each month in order to aid graduates in their job search once their training is complete. This department also provides assistance with resumes and resume clean up, interview preparation, and more.

We give our graduates access to our online medical aesthetic library, which provides thousands of pages of information in the medical aesthetic field including statistics, articles and books, clinical studies, equipment information, marketing resources, sample forms and much more.

National Laser Institute also takes pride in helping every graduate once they finish their course. Any question or concern is handled through our school director and our graduate services staff. We make ourselves available to you and go above and beyond to meet your every need. It's just one of the many things that sets us apart from other schools!





### 500
Job leads sent out per month by Graduate Services

— **Do you offer job assistance?**

We have relationships with a variety of employers across the country and when they have openings, we send out job leads to our graduates.

[8]

---

[8] https://nationallaserinstitute.com/graduate-services/; https://nationallaserinstitute.com/comprehensive-laser-course/ (last visited Dec. 18, 2024); *see also* https://web.archive.org/web/20221205144916/https://nationallaserinstitute.com/comprehensive-laser-course/ (featuring a website capture of NLI's "Comprehensive Laser Course" marketing page from December 2021, promising that NLI sends out 500 job leads per month).

88.     NLI heavily markets these services with the intent of soliciting students with little to no experience in the industry, knowing that the promise of school assistance with job placement, business formation, and an immediate increase in income would appeal to such students in particular and would entice them to enroll in NLI's courses:

> Who Can Become a Laser Tech?
>
> Aestheticians and Career Changers! Whether you have a health and beauty background or come from a totally different career, you can learn cosmetic lasers! Aestheticians especially enjoy the increased earning potential as a cosmetic laser technician. For example, the average facial is $75, yet the average photofacial is $300 – this means four times more money![9]

89.     To effectuate its scheme, NLI's marketing and coursework purposely and intentionally (1) mentions irrelevant regulatory bodies; and (2) fails to disclose that industry standard in Illinois is that those performing cosmetic treatments utilizing powerful lasers have an esthetician license and/or substantial experience working with lasers.

90.     By way of example, NLI makes efforts in its marketing to convince prospective students that NLI has the appropriate operational approvals, while failing to disclose that it is missing the State of Illinois' only required approval from the Board:

> Why should I choose your school and not your competitors?
>
> Easy, we are the first school, longest running school, largest school and only school currently approved by both the ARRA and Post Secondary Regulatory Boards and Sallie Mae. . . We also are the only school in the country that includes an in-depth session on marketing from the founder of National Laser Institute. Louis Silberman has been written up in Entrepreneur and Fortune Small Business magazines for his health/beauty marketing successes.[10]

---

[9] https://web.archive.org/web/20211028153719/https://nationallaserinstitute.com/comprehensive-laser-course-a-to-z/ (website capture of NLI's "Comprehensive Laser Course a to z" marketing page, captured Oct. 28, 2021) (last visited Dec. 19, 2024).

[10] https://web.archive.org/web/20220127080258/https://nationallaserinstitute.com/frequently-asked-questions/#why-should-i-choose-your-school-and-not-your-competitors (featuring a website capture of NLI's "Career Changers FAQs" marketing page from January 2022).

91.     NLI also fails to disclose, and, in fact, hid, that most med spas in Illinois would not hire someone to perform laser treatments without an esthetician license or substantial experience.

**As a cosmetic laser technician, am I required to obtain an aesthetician's or other license to perform cosmetic lasers (in addition to attending National Laser Institute)?**

No. This is a common misconception that only applies currently in two states in the country; to confirm there are no requirements in the state you live in, chat with one of our admissions advisors to obtain an immediate answer.

**Am I required to pass a state board exam or additional testing once I complete the National Laser Institute program?**

No. Once you have received training through National Laser Institute, you are able to practice cosmetic lasers in your given location.

**Do you help find medical directors for those of us who want to start our own businesses?**

Our sister company Louology.com is the ultimate resource for those looking to start a business or grow their practice working for someone else. They even hold monthly complimentary Zoom sessions to answer all your questions.

92.     NLI also directs its staff and representatives recruiting on its behalf to refrain from mentioning that Illinois med spas and other businesses typically seek to hire estheticians with laser experience or certifications.

93.      Silberman directs his staff to refrain from making "black and white statements," such as "You can't do X unless you are an aesthetician."

**LOUOLOGY**

94.     To further its marketing strategy, NLI created On Demand Health and Beauty Marketing, LLC, through which "[NLI] offer[s] a complimentary medical aesthetics community called Louology.com, for which [students] can sign up for a free membership to get all of [their] marketing questions answered."

15

**_ Besides the in-class marketing seminar, do you provide additional business development assistance for setting up one's own medical spa practice?**

Yes. In addition to the comprehensive marketing seminar including with your course, we offer a complimentary medical aesthetics community called Louology.com, for which you can sign up for a free memberships to get all of your marketing questions answered.    11

95. NLI touts its "sister company Louology.com [as] the ultimate resource for those looking to start a business or grow their practice working for someone else."

**_ Do you help find medical directors for those of us who want to start our own businesses?**

Our sister company Louology.com is the ultimate resource for those looking to start a business or grow their practice working for someone else. They even hold monthly complimentary Zoom sessions to answer all your questions.    12

96. Louology claims to be a marketing agency that offers an "online community" on its website, which purports to mentor its members on a number of topics in the "aesthetics" industry, including starting a new business.

97. Louology, like NLI, was founded and is managed by Louis Silberman.



"Louis the Laser Guy" founded National Laser Institute and has been leading a variety of businesses in the aesthetics, beauty, and medical markets since 2004. He's both an industry thought-leader and a nationally revered motivational speaker.

98. The companies and Silberman work hand-in-hand to lure students into enrolling in NLI's courses.

---

[11] https://nationallaserinstitute.com/aesthetician/#1696909466361-d8fc06c0-610b (last visited Dec. 10, 2024).
[12] https://nationallaserinstitute.com/aesthetician/#1696908903431-21ab0b97-b109 (last visited Dec. 10, 2024)

99. Part of Defendants' scheme involves promoting and offering NLI's students complimentary enrollment in the Louology community to receive further "mentorship," learn how to build their own med spa business, or find employment performing laser services.

100. Louology also markets a premium membership, as well as its own software suite and services to its members.

101. Louology markets itself and its services as a means of improving its members' access to the laser industry as an employee or by founding their own business.

102. On information and belief, Louology also monetizes its members through various referrals to its partners, as well as the sale of equipment and other services it pushes onto its students.

103. Louology and Silberman acknowledge the value generated by the membership of NLI graduates in the Louology community

> I've been thinking about the fact that half of our NLI grads and half our Louology members are medspa or aesthetics practice owners, RNs, medical directors, and some are employees.
>
> I often think about separating our Louology members for different messaging and lessons, but no matter who you are, learning secrets to great leadership and marketing skills benefit you, and everyone! 🥰
>
> Plus, we're noticing there's value to our keeping you all connected! 💁 💁 [13]

104. The partnership between Defendants exists to solicit students into purchasing services from Louology and NLI, to the benefit and profit of Defendants.

105. NLI markets its coursework in conjunction with access to Louology's services to solicit prospective students.

---

[13] https://louology.com/are-you-an-owner-or-an-employee-leadership-tips/ (last visited Dec. 10, 2024) (acknowledging the value generated for Louology and Silberman by NLI graduates who are directed to and enroll in Louology).

106. Louology appeared more valuable as a resource to NLI's unemployed graduates, many of whom had financed their NLI coursework with loans and continue to accrue debt.

107. Louology relies on the steady stream of NLI graduates and the value they generate for it, employed or not, to fill its ranks, purchase its services, refer to its partner businesses, or otherwise monetize.

108. Silberman profits at each step of the way as a result of this conduct.

109. This relationship was and is controlled by Louis Silberman, founder, owner, and executive of both NLI and Louology.

110. NLI and Louology exist and operate at Silberman's direction and to ultimately benefit him personally.

111. Louology and NLI are both controlled and managed in minute detail on a day-to-day basis by Silberman personally.

112. Silberman is not a licensed physician, and neither NLI nor Louology are Illinois Medical Corporations.





[14]

---

## NLI's Paid Internships

113.    As a result, in part, of former "students" of NLI who were unable to find suitable employment in the field, NLI instituted a paid internship program.

114.    NLI boasts that it is the "first in the country to offer such an exciting opportunity" in a 3-month paid "Junior Laser Tech" internship.

115.    NLI's benefit from these internships is twofold – first, and most importantly to NLI, it allows NLI to inflate its post-graduation hire rate to market and attract more students and, second, it allows NLI's graduates to leave NLI and enter the workforce with some form of experience, thereby increasing their chances of finding employment (albeit, marginally).

116.    On information and belief, NLI's internships are a sham program to falsely inflate job placement data.

## ALLEGATIONS SPECIFIC TO PLAINTIFF COLLEEN CUMMANE

117.    Plaintiff Cummane first saw advertisements and marketing for NLI's coursework in or around February 2022.

118.    Plaintiff Cummane was seeking a career change.

119.    At all relevant times, Plaintiff Cummane was not a practicing or licensed medical professional, nor did she have work experience performing cosmetic procedures using lasers or an aesthetician license.  Plaintiff Cummane accessed and reviewed NLI's websites and was exposed to the myriad representations made there, including regarding her ability to start a new profession, own her own business, and becoming certified by NLI to practice lasers in the State of Illinois.

120.    The representations present on NLI's website now, and since that time, have been the same or were or are substantially or materially similar to those Plaintiff Cummane accessed and viewed when making her decision to enroll at NLI.

121.    NLI's representations regarding salary particularly appealed to Plaintiff Cummane and convinced her to request more information about NLI's certificate courses.

122.    After requesting information, NLI representatives contacted Plaintiff Cummane directly as part of their aggressive marketing tactics.

123.    These representatives made representations regarding NLI's coursework and graduation outcomes as outlined herein.

124.    On information and belief, these representations were made, and the entire interaction was conducted, pursuant to marketing scripts provided to the representatives by NLI, and at the direction of Silberman.

125.    However, NLI's representations were false, and tailored specifically to lure unsuspecting students into enrolling in NLI's coursework while avoiding any discussion of NLI's failure to be registered as a school with the Board.

126.    During the courses, Cummane and other students were pressured to obtain cosmetic treatments, sometimes multiple treatments in a single week.

127.    NLI allowed students and staff to bypass medical and safety protocols, including by allowing treatments without the necessary supervision or safety protocols and by allowing for patient safety reviews and patient assessments to be conducted over the phone by various out-of-state medical professionals.

128.    Believing the representations made by NLI's agents and sales personnel, and at NLI's introduction and insistence, Plaintiff Cummane ultimately entered into a financing agreement with one of NLI's partners to pay for her course.

129.    Plaintiff Cummane borrowed $7,545.00 to fund her courses at NLI.

130.    Since that time, Plaintiff Cummane has paid interest, fees, and servicing charges for the loan she secured to pay for NLI's coursework.

131.    Plaintiff Cummane completed her certificate course in or around May, 2022.

132.    Plaintiff Cummane was issued a certificate confirming her completion of NLI's course.

133.    After graduating, Plaintiff Cummane began the long arduous process of seeking employment with the incorrect belief that the certificate awarded by NLI somehow qualified her to practice medical or "aesthetic" lasers in Illinois. This was not the case.

134.    Plaintiff Cummane never found employment as a laser technician or otherwise performing laser services.

135.    The med spas and other companies Plaintiff Cummane applied to sought laser technicians with an esthetics license or meaningful experience working with lasers, which Plaintiff Cummane did not have and did not think she needed as a result of NLI's representations.

136.    Despite representing that NLI would provide its graduates with hundreds of job leads every month from companies with which it had partnered, it failed to do so.

137.    Plaintiff Cummane did not receive the graduate job placement services as promised. Job posting e-mails were sent for 1-2 months after graduation and stopped thereafter.

138.    Plaintiff Cummane was harmed in the full amount she paid for her courses with NLI, as well as any interest, fees, and other charges incurred to finance her education, in addition to other harm.

139.    Had Plaintiff Cummane known that NLI's course, and certificate, were being operated without the necessary approvals required by Illinois law, or that neither the course nor certificate would in any way qualify her to perform laser treatments in the State of Illinois, or that

the actual cost to attend the courses was negotiable based on "scholarship awards," she never would have taken the courses.

140.     Plaintiff Cummane's damages resulting from NLI's conduct continue to accrue on a daily basis.

## ALLEGATIONS SPECIFIC TO PLAINTIFF GABRIELLE VAN ECK

141.     Plaintiff Van Eck first saw advertisements and marketing for NLI's coursework on or around February 2022.

142.     Plaintiff Van Eck was seeking a career change.

143.     At all relevant times, Plaintiff Van Eck was not a practicing or licensed medical professional, nor did she have work experience performing cosmetic procedures using lasers  or an esthetician license.  Plaintiff Van Eck accessed and reviewed NLI's websites and was exposed to the myriad representations made there, including regarding her ability to start a new profession, own her own business, and becoming certified by NLI to practice lasers in the State of Illinois.

144.     The representations present on NLI's website now, and since that time, have been the same or were or are substantially or materially similar to those Plaintiff Van Eck accessed and viewed when making her decision to enroll at NLI.

145.     NLI's representations regarding salary particularly appealed to Plaintiff Van Eck and convinced her to request more information about NLI's certificate courses.

146.     After requesting information, NLI representatives contacted Plaintiff Van Eck directly as part of their aggressive marketing tactics.

147.     These representatives made representations regarding NLI's coursework and graduation outcomes as outlined herein.

148. On information and belief, NLI's representations were made, and the entire interaction was conducted, pursuant to marketing scripts provided to the representatives by NLI, and at the direction of Silberman.

149. However, those representations were false, and tailored specifically to lure unsuspecting students into enrolling in NLI's coursework while avoiding any discussion of NLI's failure to be registered as a school with the Board.

150. However, those representations were false.

151. During the courses, Cummane and other students were pressured to obtain cosmetic treatments, sometimes multiple treatments in a single week.

152. NLI allowed students and staff to bypass medical and safety protocols, including by allowing treatments without the necessary supervision or safety protocols and by allowing for patient safety reviews and patient assessments to be conducted over the phone by various out-of-state medical professionals.

153. Believing the representations made by NLI's agents and sales personnel, and at NLI's introduction and insistence, Plaintiff Van Eck ultimately entered into a financing agreement with one of NLI's partners to pay for her certificate course.

154. Plaintiff Van Eck was offered and "received" a $1,000 scholarship from NLI. However, it was never explained to her how such funds would be applied or disbursed, or whether it was actually applied or disbursed.

155. Plaintiff Van Eck also borrowed $8,545.00 to fund her courses at NLI.

156. Since then, Plaintiff Van Eck has paid interest, fees, and servicing charges for the loan she secured to pay for NLI's coursework.

157. Plaintiff Van Eck completed her certificate course in or around May 2022.

158.   Plaintiff Van Eck was issued a certificate confirming her completion of NLI's course.

159.   After graduating, Plaintiff Van Eck began the long arduous process of seeking employment and believing NLI's representations that the certificate somehow qualified her to practice medical or "aesthetic" lasers in Illinois. This was not the case.

160.   Plaintiff Van Eck never found employment as a laser technician or otherwise performing laser treatments.

161.   The med spas and other companies Plaintiff Van Eck applied to sought laser technicians with an esthetics license or meaningful experience working with lasers, which Plaintiff Van Eck did not have and did not think she needed as a result of NLI's representations.

162.   Despite representing that NLI would provide its graduates with hundreds of job leads every month from companies with which it had partnered, it failed to do so.

163.   Plaintiff Van Eck also did not receive the graduate job placement services as promised. Job posting e-mails were sent for 1-2 months after graduation and stopped thereafter.

164.   Plaintiff Van Eck was harmed in the full amount she paid for her courses with NLI, as well as any interest, fees, and other charges incurred to finance her education, in addition to other harm.

165.   Had Plaintiff Van Eck known that NLI's course, and certificate, were being operated without the necessary approvals required by Illinois law, or that neither the course nor certificate would in any way qualify her to provide laser services in the State of Illinois, or that the actual cost to attend the courses was negotiable based on "scholarship awards," she never would have taken the courses.

166. Plaintiff Van Eck's damages resulting from NLI's conduct continue to accrue on a daily basis.

## CLASS ACTION ALLEGATIONS

167. Plaintiffs bring their claims individually and on behalf of the following Class pursuant to Rule 23:

> All persons who enrolled in an NLI laser course which took place in the State of Illinois within the applicable limitations period.

168. Excluded from the Class are: (1) Defendants; (2) Defendants' officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action and the members of their family; (4) persons who properly execute and file a timely request for exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (6) Plaintiff's counsel and Defense counsel, and their experts and consultants.

169. **Numerosity**. The proposed Class contains members so numerous that separate joinder of each Class Member is impracticable. Defendants have been operating their scheme in the State of Illinois for years. On information and belief, the Class numbers in the hundreds.

170. **Commonality and Predominance**. There are questions of fact or law common to the Class, which common questions predominate over any questions affecting only individual members, including but not limited to the following:

- Whether Defendant marketed and issued unlawful certificates to graduates in contravention of the laws of the State of Illinois;
- Whether Defendants' conduct violated the IPBVS;
- Whether Defendants' conduct violated the ICFA;
- Whether Defendants acted in concert to misrepresent the quality and value of NLI's certificates;

- Whether Defendants omitted or concealed material aspects of their courses and certificates from consumers to incite them to purchase their courses;

- Whether Defendants had a duty to Plaintiff and members of the Class, and whether Defendants conduct breached such duties;

- Whether Plaintiff and the Class were harmed as a result of Defendants' conduct; and

- Whether Defendants benefitted to Plaintiff and the Class's detriment, and whether it would be unjust for them to maintain such benefit.

171. **Typicality**. Plaintiff's claims are typical of the Class members' claims insofar as they are identical and Plaintiff has no circumstances antagonist to the Class.

172. **Adequacy of Representation**. Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff understands the obligations inherent in representing a putative class, and the corresponding duties. Plaintiff has retained counsel competent and experienced in complex and class action litigation.

173. **Superiority**. A class action is the superior mechanism for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### COUNT I
**Violation of the Illinois Private Business and
Vocational Schools Act 105 ILCS 426/1 *et seq.* against Defendants
on behalf of Plaintiffs and the Class**

174. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

175. The purpose of the Act is to

> provide for the protection, education, and welfare of the citizens of this State; to provide for the education, protection, and welfare of the students of its private business and vocational schools; and to facilitate and promote quality education and responsible, ethical, business practices in each of the private business and vocational schools enrolling students in this State.

105 ILCS 426/5.

176.    To accomplish this, the Act prohibits anyone from "operating a private business and vocational school without obtaining from the Board a permit of approval." 23 ILAC 1095.20; 105 ILCS 426/20.

177.    It likewise prohibits any certificate from being awarded by a business and vocational school unless the school meets criteria identified under the Act and is approved to issue that certificate by the Board. 105 ILCS 426/25.

178.    The Act forces schools to make a number of mandatory public disclosures for consumers and prospective students to rely upon in making decisions. 105 ILCS 426/37; 23 ILAC 1095.240.

179.    Among the disclosures required are "the number of students admitted in the program" for that reporting period, the "number of students enrolled in the program who were" placed in their field of study, placed in a related field, placed out of field, not available for placement due to employment reasons, or not employed. *See id*.

180.    The Act further requires a PBVS to take reasonable efforts report the "number of graduates who obtained employment in the field who did not use the school's placement assistance during the reporting period" as well as "the average starting salary for all school graduates employed during the reporting period[.]" *Id*.

181.    NLI and its agents were also prohibited from stating that it was approved to award a certificate in the State of Illinois until it had received approval from the Board to do so. 23 ILAC 1095.80(g)(2).

182.    NLI was likewise prohibited from "advertis[ing] or stat[ing] in any manner that it [was] 'accredited' by the Board to award certificates." 23 ILAC 1095.80(g)(3).

183. NLI and its agents were prohibited from "publish[ing] or otherwise communicat[ing] to prospective students, faculty, staff or the public misleading or erroneous information about the certificate-granting status of a given school." 23 ILAC 1095.80(g)(4).

184. As discussed at length above, NLI failed to register with the Board, or comply in any way with the Act.

185. NLI does not meet the criteria for approval under the Act.

186. NLI does not and did not make the disclosures mandated by the Act.

187. NLI failed to comply with the basic requirements of the Act, let alone its strict and particular procedural, marketing, and record keeping safeguards in any way.

188. Defendants knew that the statements and promises they made in NLI marketing materials, and otherwise as Louology to induce NLI student enrollment, were false or misleading, but still made those representations to prospective students in an effort to solicit, influence, or induce them into paying for NLI courses and follow-up courses.

189. NLI and other schools subject to the Act are prohibited from even advertising their services, or soliciting students, without appropriate authorization. 105 ILCS 426/65.

190. As discussed, Defendants, both personally and by controlling NLI and Louology's marketing materials, advertised and otherwise marketed NLI's unlawful courses and certificates to prospective students like Plaintiffs and other Class Members with the intent they rely on their representations and enroll in NLI's courses.

191. Defendants concealed or misrepresented the character of the courses and certification offered, insofar as the courses offered would not actually qualify students to perform laser procedures and there is no recognized certification under Illinois law for a "cosmetic laser technician."

192.     In other words, Defendants concealed or misrepresented that the certificates were, in fact, worthless.

193.     Additionally, prospective students would not be able to own or operate their own cosmetic laser business in Illinois upon completion of the course, despite Defendants' representations otherwise.[15]

194.     Defendants also actively omitted or concealed information regarding the actual requirements of performing laser services and owning a med spa in order to solicit additional students.[16]

195.     These representations were repeatedly made by Defendants with the intent of soliciting potential students and inducing their enrollment in NLI's courses.

196.     Defendants knew they were misrepresenting the qualities and nature of NLI's courses, certificates, and employment outcomes, and that NLI was not approved to operate a private business or vocational school in the State of Illinois.

197.     At the direction of Silberman, required information was neither reported to the Board by NLI, nor made available to prospective students as required by the Act.

198.     Had the information been reported, Plaintiff and other Class Members could have made informed decisions about whether to attend NLI based on its graduate employment outlook.

199.     NLI was required to have a system for receiving student complaints and submitting them to the Board for review, determination, and resolution.

---

[15] *See What it Really Takes to Open a Medspa*, https://louology.com/what-it-really-takes-to-open-a-medspa/ (marketing the potential for opening a business to potential members, namely, NLI students) (last visited Dec. 20, 2024).

[16] *What states require a medical spa to be owned by an M.D.?* https://louology.com/what-states-require-a-medical-spa-to-be-owned-by-an-m-d/ (dated June 2, 2023, but noting that "as of September, 2021" that several states have regulations or restrictions for the ownership of "medical spas," but omitting Illinois, a State in which it has had persistent operations, as one of them) (last visited Dec. 20, 2024).

200. Despite the Act's mandate, NLI did not have such a system in place. 23 ILAC 1095.250.

201. On information and belief, NLI received student complaints that were never submitted to the Board for proper resolution as required by the Act.

202. Had such complaints been submitted to the Board, NLI's conduct in violation of the law would have been discovered by the Board and could have prevented the injuries sustained by Plaintiffs and the Class.

203. At a minimum, complaints and their resolutions would have been compiled for review by prospective students as required by the Act, in order for them to develop an informed and educated decision about enrollment.

204. Additionally, had Plaintiff and other Class Members known the reality of their employment prospects and previously filed student complaints, as NLI was required to report under the Act, they either would not have enrolled in NLI's courses.

205. Despite marketing by Defendants to the contrary, NLI regularly operated with a deficit of reliable equipment and on-hand or available instructors.

206. This regularly deprived the NLI student base of the promised coursework and content for which they had enrolled, contracted, and paid for.

207. Despite this, and fully knowing that the ability to deliver and instruct its courses is material to any agreement for such courses, Defendants never notified potential students or adjusted their marketing or coursework when a course would be unavailable to teach due to a lack of equipment or instructors.

208. NLI, at the express direction of Silberman, would offer complimentary treatment or other various gifts or services to placate students who had paid for and been promised, but had not received, a complete and legally compliant course.

209. NLI, at the direction of Silberman, marketed its course catalog to prospective students in full regardless of the status or sufficiency of its equipment, faculty, and State approvals.

210. In doing so, NLI and Silberman misrepresented and concealed NLI's actual capabilities and offerings in an effort to solicit additional clientele who would have been dissuaded had they known they would be unable to pursue their intended careers performing laser services.

211. Plaintiffs and other Class Members were exposed to and relied on marketing, advertisements, and solicitations made by NLI and its various operators, agents, including Louology, and owners, including Silberman, that were identical or substantially or materially similar to those identified herein with the intent of soliciting their business as students of NLI's courses.

212. NLI was at all times prohibited from offering its courses and certificates in the State of Illinois.

213. As such, NLI, Louology as its agent, and Silberman as its agent and owner, were prohibited from marketing NLI's services to Plaintiff and Class Members, or enrolling them as students in NLI's courses.

214. Plaintiff and other Class Members believed that NLI was a reputable and ethical vocational school operating within the boundaries and requirements of Illinois law, because, among other reasons, Defendants presented themselves as such in their various marketing materials.

215.    Defendants went to great lengths to misrepresent NLI as a legally compliant institution authorized to offer courses and issue certificates, and concealed or omitted information to the contrary in their representations, in order to solicit additional students and increase its profits.

216.    As a result of relying on Defendants' concealment of material information and misrepresentations, Plaintiffs and other Class Members believed that "in just two weeks or less [they could] become [] certified cosmetic laser technician[s]" and own their own business or be employed in the med spa industry if they took NLI's courses.[17]

217.    NLI also offered "job assistance" to its graduates, claiming it "[had] relationships with a variety of employers across the country and when they have openings, we send out job leads to our graduates." *Id.*

218.    NLI regularly marketed a staggering 500 jobs leads per month:[18]



---

[17] https://nationallaserinstitute.com/comprehensive-laser-course/ (last visited Dec. 30, 2024).
[18] https://nationallaserinstitute.com/comprehensive-laser-course/ (last visited Sept. 16, 2024).

219.    Despite this, Plaintiff and Class Members did not receive a regular set of valid job postings or openings from NLI to aid their search for employment, let alone the hundreds of job postings NLI promised to deliver on a monthly basis.

220.    These leads would have been valuable to Plaintiff and other Class Members, as their job searches proved fruitless for many, including Plaintiffs, because the NLI certificates were handed out in contravention of Illinois law and held no real value.

221.    Defendants knew, had reason to know, or should have known that Illinois med spas and other companies offering laser services seek a license in aesthetics and/or substantial practical experience operating commercial lasers.

222.    To make matters worse, Plaintiff and Class Members incurred significant amounts of debt in order to finance their "education" with NLI.

223.    This debt, in many instances, was secured through lenders that market directly through NLI's own website.[19]

224.    The nature of this relationship was not clarified for prospective students.

225.    NLI also offers "scholarships" to potential students, through which prospective students can submit a brief write up of why they are in "financial need of a scholarship."[20]

226.    On information and belief, these scholarships are arbitrarily awarded at the whim and direction of Silberman and other NLI staff as discounts (not scholarships).

227.    NLI's goal in offering the scholarships is to variably reduce a potential student's tuition to an amount that would be palatable to the individual student in order to ensure their enrollment.

---

[19] *See* https://nationallaserinstitute.com/financing-available/ (last visited Sept. 5, 2024).
[20] *Scholarships*, https://nationallaserinstitute.com/laser-training-scholarships/ (last visited Sept. 20, 2024).

228.    As such, they act less like a scholarship, and more as a mechanism for NLI to alter its pricing at will to lure and accommodate those who otherwise would not take its courses.

229.    The end result is that the scholarships cause the actual listed tuition rates to be illusory and subject to change based on the economic needs of NLI and policies instituted by Silberman with the sole purpose of serving NLI's revenue needs at the expense of prospective and often financially challenged students.

230.    Had Plaintiff and other Class Members known that the tuition rates they agreed to by enrolling NLI's coursework were illusory and not representative of actual tuition rates to be paid by students, they would not have enrolled in such courses.

231.    As a result of Defendants' violations of the Act as described herein, and their underlying fraudulent conduct, Plaintiff, and other Class Members have incurred significant actual damages the form of fees, tuition, equipment, and travel costs associated with participating in NLI's coursework, as well as any interest and fees incurred as a result of financing the same.

232.    Plaintiff and the Class are entitled to, and seek, actual damages, treble actual damages if fraud is proved, reasonable attorneys' fees and costs, injunctive relief, a declaration that Defendants conduct has violated 105 ILCS 426/85(k), and any and all other equitable relief that the Court deems appropriate.

## COUNT II
### Violation of the Illinois Consumer Fraud Act 815 ILCS 505/1 *et seq.*
### against Defendants on behalf of Plaintiff and the Class

233.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

234.    The ICFA provides that Defendant may not employ "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact. 815 ILCS 502/2.

235.　As discussed above, Defendants repeatedly misrepresented the quality, nature, and value of the educational services and certificates NLI offered prospective students, including Plaintiff and the Class.

236.　NLI also misrepresented that it was able to conduct its courses and award certificates to students.

237.　NLI, at the direction of Silberman, through its website, social media, advertising, coursework, and educational materials, misrepresented the employability of its graduates, legal legitimacy of its Illinois coursework, and the value and nature of its certificates.

238.　Defendants also misrepresented the ability of NLI graduates to own their own businesses in the industry with the intent that students rely on such misrepresentations and enroll in NLI's courses.

239.　Specifically, Defendants misrepresented that NLI's courses would allow graduates to secure employment performing laser services, despite that its certificates were issued in contravention of Illinois law and that its certificates are not recognized as representing any qualification in the State of Illinois for performing laser services.

240.　Additionally, no such certificate is required in the industry of performing med spa or other lasers services in Illinois.

241.　Instead, any laser services, whether cosmetic or not, require a physician to be involved when conducting treatment.

242.　As discussed in depth, Defendants, were prohibited by the Act from advertising or offering NLI's laser courses or certificates at all relevant times herein.

243.    NLI and Silberman concealed and omitted a number of material facts that it was duty bound to disclose by the Act, including the unavailability of necessary instructors and equipment, graduate employment numbers, student complaints, and the fact that NLI was not registered with the Board to offer its courses and certificates as required by the Act.

244.    Additionally, each Defendant concealed or omitted the actual requirements of the laser and med spa industries in communications and marketing to prospective students.

245.    Defendants facilitated NLI's deceptive marketing, in violation of the strict requirements of the State of Illinois.

246.    Defendants operated collectively, and at Silberman's direction, to facilitate their unlawful business practices through NLI's Oak Brook training facility.

247.    Defendants, including Silberman personally, marketed NLI's courses to prospective students, enrolled them in courses, charged them tuition, conducted their courses, issued their certificates, and ultimately directed them to Louology in order to promote its services to their graduates and benefit Silberman.

248.    Defendants concealed or omitted that lasers are the practice of medicine in the State of Illinois and that NLI's certificate in no way qualified them legally or otherwise to practice in the industry or own a business engaging in the practice of medicine.

249.    NLI's misrepresentations, misleading statements, and false promises were made by or through its owners, operators, and authorized agents, including Silberman and Louology.

250.    Defendants intended that prospective students rely on those misrepresentations, misleading statements, and false promises in order to solicit them into enrolling in NLI's unauthorized and valueless certificate, and pursuing follow-up services at Louology.

251.    Defendants knew and had a working understanding of the relevant regulatory frameworks of Illinois and other States.

252.    Despite this, NLI, at Silberman's direction, and under his control, offered its courses to unsuspecting prospective students.

253.    Defendants' conduct is in violation of the Act and constitutes an unlawful practice under the Illinois Consumer Fraud Act. 815 ILCS 505/2MMM.

254.    Defendants' goal was to facilitate NLI's misrepresentations that graduates could practice and even own their own business offering laser services with nothing more than a certificate from NLI.

255.    This was a promising prospect to NLI's numerous unemployed graduates.

256.    Plaintiff and other Class Members relied on Defendants' misrepresentations as alleged herein, and as Defendants intended, and enrolled into NLI's unpermitted courses.

257.    As such, Plaintiffs and Class Members suffered harm and actual damages in the amount of all monies paid for the unlawful courses,

258.    Plaintiff and other Class Members would not have enrolled in NLI's courses had they known the truth regarding its misrepresentations as to its legal operating status, lack of value of its certificates in the med spa industry, or that they could not enter into or own a business in the med spa industry using the certificate alone.

259.    Plaintiff and other Class Members would not have enrolled in or paid for NLI's coursework had NLI represented that its courses were being lawfully administered in the State of Illinois, and, therefore, the certificates it issued were worthless.

260.    As a result, Plaintiff and Class Members also suffered harm and actual damages as a result of NLI's concealment of material facts.

261.    As alleged, Defendants' conduct was in violation of the Act, and was therefore unlawful in the State of Illinois and pursuant to the ICFA.

262.    But for Defendants' conduct in violation of the Act, Plaintiff and the Class would not have enrolled in NLI's courses.

263.    Plaintiff and the Class are entitled to, and seek, actual damages, punitive damages, attorneys' fees and costs, injunctive relief, and any and all further equitable relief that the Court deems appropriate.

### COUNT III
**Fraudulent Misrepresentation**
**against Defendants on behalf of Plaintiff and the Class**

264.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

265.    As alleged, Defendants knowingly and intentionally misrepresented material facts from Plaintiff and Class Members to induce them into paying for its services.

266.    NLI offered laser courses for which it charged tuition to Plaintiff and the Class.

267.    NLI's courses purported to provide its students with the skills and abilities necessary to obtain employment as laser technicians or otherwise performing laser services immediately upon completion of NLI's coursework.

268.    Defendants regularly misrepresented the qualities and characteristics of NLI's courses, certificates, and employment outcomes to potential students, with the intent of soliciting them to enroll in its courses.

269.    Defendants marketed NLI as being capable of offering "certificates" that would allow students to offer and perform laser services or that would allow them to own their own business offering laser services.

270. Defendants intentionally and knowingly made these representations to Plaintiff, the Class, and other prospective students, with the intent they would be relied upon in determining whether to enroll in NLI's courses.

271. However, as discussed, NLI was prohibited by law from issuing such certificates or offering courses with the promises of such outcomes.

272. Defendants knew that NLI was not registered with the appropriate Illinois State authorities to market or conduct its courses, or to issue certificates purporting to evidence that its students were certified to perform or conduct any professional or medical acts as a result of its coursework.

273. Defendants knew that the certificates would not qualify or certify NLI's students in any way in the State of Illinois, or allow them to operate or own a med spa, laser, or medical business in the State.

274. NLI misrepresented the cost of its tuition by having illusory pricing practices wherein the actual price of tuition did not match that which was published to prospective students.

275. NLI awarded scholarships on arbitrary bases with the intent to utilize them as a marketing tactic to promote enrollment from potential students that could not pay the full advertised tuition price, ensuring they could get some revenue out of each prospective student.

276. As such, the actual cost of tuition was a much lower and an effectively negotiable amount subject to the whim of NLI.

277. Had Plaintiff or Class Members known that the tuition posted was illusory, they would not have enrolled in NLI's courses.

278. Plaintiff and other Class Members reasonably relied on Defendants' representations that it could issue certificates that would allow them to enter into the med spa and laser industries as either an employee or a business owner.

279. Plaintiff and the Class were harmed in the amount of monies spent on tuition in reliance on these representations, as well as any resulting interest and fees incurred in funding or financing their tuition because the education and certificates marketed and delivered failed to satisfy the strict requirements of Illinois law, and were worthless.

280. Plaintiff and Class Members would not have enrolled in, or purchased, any program from NLI had they known Defendants did not have the legal authority to conduct such coursework and issue such certifications.

281. Plaintiff and the Class Members are seek actual and punitive damages, reasonable attorneys' fees and costs, a declaration of this Court that Defendants conduct constitutes fraud, and any and all further equitable relief that this Court deems appropriate.

### COUNT IV
### Fraudulent Concealment
### against Defendants on behalf of Plaintiff and the Class

282. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

283. NLI knowingly and intentionally concealed and omitted material facts from representations made to Plaintiffs and the Class.

284. NLI was not legally authorized to offer its certificate courses to students in the State of Illinois. Despite this, it did so, ensuring that its lack of legal authority to offer those services was concealed from prospective students and omitted from any outward facing information.

285. Not only did NLI not inform Plaintiff and the Class that it was not authorized to offer its services or certificates in the State of Illinois, but Defendants operated in concert to

conceal that the coursework NLI offered actually conveyed no value or legally recognizable certification, and would not grant NLI students a valid credential in the med industry or allow them to own a business in the med industry.

286.     This was done with the intent of soliciting Plaintiffs and Class Members as students.

287.     As a PBVS, NLI was under a duty to make certain disclosures to Plaintiff and the Class pursuant to 105 ILCS 426/37.

288.     However, at Silberman's direction, NLI made none of these disclosures and Defendants concealed the information deemed relevant and material by the Illinois legislature.

289.     Louology furthered this deception by marketing its services in conjunction with NLI's courses, and by repeatedly representing that graduates could either participate in the industry or own their own business, while concealing that other requirements would prohibit many, if not all, of its certificate students from owning a med spa or laser business.

290.     These representations were made to solicit and convince potential students into taking NLI's courses.

291.     Plaintiff and the Class Members reasonably relied on the facts and circumstances as they knew them at the time.

292.     As a result of Defendants' concealment of these material facts in its marketing and communications, Plaintiff and the Class suffered damages in the amount of monies paid for NLI's courses, and any resulting fees and interest incurred to finance their tuition.

293.     Had Plaintiff and the Class Members known the information concealed by Defendants regarding NLI's courses, including, but not limited to, placement and employment information, the requirements to participate in the industry as an employee or a business owner,

and salary information, availability of equipment and instructors, let alone that NLI could not legally offer the services and certificates marketed, they would not have enrolled in NLI's program.

294.    Plaintiff and the Class Members are entitled to and seek actual and punitive damages, reasonable attorneys' fees and costs, a declaration of this Court that Defendants conduct violating the Act constitutes fraud, and any and all further equitable relief that this Court deems appropriate.

**COUNT V**
**Negligence**
**against NLI on behalf of Plaintiff and the Class**

295.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

296.    As a PBVS, NLI owed Plaintiff and Class Members an assortment of duties of care as imposed by the Act, including making a number of accurate and full disclosures in compliance with the relevant law regarding the outcomes, standards, and quality of their services.

297.    NLI was also under a duty to take the appropriate steps deemed necessary by law to provide for the protection, education, and welfare of the citizens of the State of Illinois, and providing services in a responsible, ethical, manner.

298.    NLI additionally had a series of requirements imposed upon it by the Act in order to provide certificates or even market to its students.

299.    These duties were imposed by the legislature of the State of Illinois with the intent that they benefit students and potential students of private business and vocational schools in the State.

300.    NLI failed to satisfy any duty imposed on it by the Act, let alone those which it owed to Plaintiff and Class Members.

301.    NLI's failures to satisfy the duties which it owed to Plaintiff and Class Members as imposed by the State caused them to suffer damages in the amount of monies paid for NLI's courses, including any associated financing fees and interest.

302.    Had NLI adequately satisfied the duties imposed upon it by the State, Plaintiff and Class Members would have been presented with accurate information upon which to rely in making their decision on whether to enroll into NLI's coursework or not.

303.    The certificates received by Plaintiff and Class Members would have been awarded in satisfaction of Illinois law and would not have been unlawfully issued and worthless as a result.

304.    Had NLI satisfied its duty to make information disclosures available to consumers pursuant to the Act, Plaintiff and the Class would have had accurate information upon which to base their decision to enroll, and either would not have enrolled for the services offered.

305.    As such, NLI's failure to uphold the duties imposed upon it by the State of Illinois was a substantial factor in causing harm to Plaintiff and the Class. NLI's failure to satisfy these duties was a direct and proximate cause that resulted in the harms sustained by Plaintiff and the Class.

306.    Plaintiff and the Class Members are entitled to, and seek, actual damages, punitive damages, reasonable attorneys' fees and costs, a declaration of this Court that Defendants conduct violating the Act constitutes fraud, and any and all further equitable relief that this Court deems appropriate.

**COUNT VI**
**Unjust Enrichment**
**against Defendants on behalf of Plaintiff and the Class**

307.    Plaintiff incorporates the foregoing Paragraphs as if fully stated herein.

308. To the extent that the Court finds that the transactions to enroll in NLI's certificate courses constitute a contract, such contract is *void ab initio* as a contract for the sale of unlawful services, with unlawful certifications the subject of each such disallowed transaction.

309. A transaction that NLI was prohibited from offering or entering into.

310. By marketing and selling unlawful courses and completion certificates, Defendants were unjustly enriched by their unlawful conduct.

311. Defendants' unjust enrichment occurred to the detriment of Plaintiffs and Class Members.

312. The benefit retained by Defendants is far greater than the monies paid by Plaintiff and Class Members, as Defendants are not only enriched by the funds which they have received from Plaintiffs and Class Members in exchange for Defendants' unlawful services, but Defendants' also benefit by reducing what would ordinarily be necessary compliance expenses to ensure their services are satisfactory and compliant with the laws of the State of Illinois, further enriching them to the detriment of consumers, including Plaintiff and the Class.

313. Defendants have thus been unjustly enriched by at least in the amount that Plaintiff and each Class Member spent on their certificate coursework and any associated interest. It would be unjust to allow Defendants to retain this enrichment.

314. Defendants' retention of these monetary benefits violates fundamental principles of justice, equity, and good conscience.

315. Plaintiff and the other members of the Class are entitled to restitution in the amount by which Defendants have been unjustly enriched to Plaintiff and the Class Members' detriment, and an order requiring Defendants to disgorge any additional profits or other benefit they have retained as a result of their unjust and unlawful conduct.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Colleen Cummane and Gabrielle Van Eck, on behalf of themselves and all others similarly situated, respectfully requests that the Court enter an order awarding the following relief as plead in the foregoing and judgment against Defendants:

a.  An Order certifying the Class, defining the Class as requested herein, appointing Plaintiff as Class representative, and appointing their counsel as Class counsel;

b.  An award of any actual, compensatory, and enhanced damages permitted to Plaintiff and other Class Members, for all damages sustained as a result of Defendant's wrongdoing, in an amount to be proven at trial, including prejudgment interest thereon;

c.  An award of punitive damages for Defendant's misconduct and deliberate indifference;

d.  An award of reasonable attorneys' fees, costs, and other litigation expenses;

e.  An award of pre- and post-judgment interest as available under law;

f.  The disgorgement of any funds in the amount Defendant was unjustly enriched by its conduct;

g.  An Order enjoining Defendant from continuing its unlawful conduct; and

h.  Such further and other relief as the Court deems just, reasonable, and equitable.

Dated: January 2, 2025

Respectfully submitted,

**Plaintiffs, on behalf of themselves and others similarly situated**

By: /s/ *Laura Luisi*
Laura Luisi (Atty. No. 6321034)
Jamie Holz (Atty. No. 6319247)
Luisi Holz Law
LuisiL@luisiholzlaw.com
HolzJ@luisiholzlaw.com
161 N. Clark, Suite 1600
Chicago, Illinois 60601
Tel: (312) 639-4478
*Attorneys for Plaintiffs and the Putative Class*